IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TRACY RAMTHUN and ANGELA CLEMENS                          PLAINTIFFS

v.                               Case No. 5:13-CV-05039

BRYAN CAREER COLLEGE – INCORPORATED,
d/b/a Bryan College; and BRYAN UNIVERSITY                 DEFENDANTS

## OPINION AND ORDER

Currently before the Court is the motion (Doc. 57) for class certification under Rule 23 and brief in support (Doc. 58) submitted by Plaintiffs Tracy Ramthun and Angela Clemens. Defendants Bryan Career College – Incorporated and Bryan University (together, "Bryan") filed a response (Doc. 67) and brief in support (Doc. 63) under seal, and Plaintiffs filed a reply (Doc. 72) under seal with leave of the Court.  Plaintiffs also filed a motion for leave to file supplemental affidavits to their motion for certification.[1]  Although Bryan requested a hearing, the Court has determined that no oral argument is necessary to decide this motion.

Plaintiffs move to certify this class action for all claims raised in their second amended complaint (Doc. 44).  The second amended complaint also identified Carolina Trevino as a plaintiff and putative class representative, but she has since been dismissed from the case on her own motion.  Plaintiffs bring causes of action for fraud, constructive fraud, a violation of the Arkansas Deceptive Trade Practices Act ("ADTPA") (Ark. Code Ann. § 4-88-101 et seq.), breach of contract, and breach of implied warranty.  For the reasons explained below, Plaintiffs' motion to certify (Doc. 57) will be DENIED.  Additionally, the Court will order Plaintiffs to SHOW CAUSE why Bryan is not entitled to judgment as a matter of law on the breach of

---

[1] The instant order grants this motion, and the Court has considered the affidavits in resolving the motion to certify.

1

implied warranty and ADTPA claims.

## I.   Background

Plaintiffs are residents of Arkansas who enrolled in and attended classes at Bryan's campus in Rogers, Arkansas, and received medical assistant degrees. Ramthun was enrolled from April 21, 2010 to January 6, 2012. Clemens was enrolled from August 2009 to April 2011. Plaintiffs enrolled and attended classes after speaking with admissions advisors, recruiters, and agents of Bryan at the Rogers, Arkansas campus and signing various documents. Plaintiffs allege that Bryan represented to them that Bryan was fully and nationally accredited, but did not tell them that, due to the difference in national and regional accreditation standards, credit hours from nationally accredited institutions were unlikely to be accepted by regionally accredited institutions. Upon completion of their degrees, Plaintiffs allegedly attempted to transfer credit hours from Bryan to other institutions and found that those institutions did not accept Bryan credits. (Docs. 74-1–74-4). Plaintiffs claim that Bryan committed fraud and breached its contract with them by representing that its credit hours could be transferred to other institutions.

Plaintiffs brought the instant action in the state courts of Arkansas. Bryan removed on the basis of the Class Action Fairness Act, 28 U.S.C. § 1332(d), and then filed a motion to dismiss. The Court[2] denied the motion on the grounds that the Complaint alleged plausible claims based on nontransferability of credits, but otherwise rejected Plaintiffs' educational malpractice allegations. (Doc. 18). On joint motion of the parties, the Court later stayed all deadlines in the case pending resolution of the class certification issue. (Doc. 40). Plaintiffs then moved for class certification.

---

[2] Until March 13, 2014, this case was assigned to the Honorable Jimm Larry Hendren. It was subsequently reassigned to the Honorable Timothy L. Brooks, and then to the undersigned on March 27, 2014, upon Judge Brooks's recusal.

Plaintiffs define their putative class as "[a]ll students who, from January 23, 2008 to December 31, 2011, enrolled and were charged tuition by Bryan College." (Doc. 58, p. 15). Assuming the necessity of subclasses, Plaintiffs propose to further divide the putative class into four subclasses, defined as:

> All students who, from January 23, 2008 to December 31, 2011, enrolled at Bryan College's Rogers, Arkansas campus and were charged tuition by Bryan College.

> All students who, from January 23, 2008 to December 31, 2011, enrolled at Bryan College's Springfield or Columbia, Missouri campuses and were charged tuition by Bryan College.

> All students who, from January 23, 2008 to December 31, 2011, enrolled at Bryan College's Topeka, Kansas campus and were charged tuition by Bryan College.

> All students who, from January 23, 2008 to December 31, 2011, enrolled at Bryan College's online campus and were charged tuition by Bryan College.

*Id*. The putative subclass claims include all the claims in the complaint—fraud, constructive fraud, a violation of the ADTPA, breach of contract, and breach of implied warranty—with the exception that the ADTPA claim be construed as a claim under the state consumer protection laws relevant to each putative subclass.[3]

## II.   Applicable Law

The procedure for certifying a class action lawsuit is found in Federal Rule of Civil Procedure 23.  On a motion for class certification, the movant has the burden to affirmatively demonstrate that the requirements of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, --U.S.--, 131 S.Ct. 2541, 2551 (2011).   The Court must conduct a rigorous analysis to determine whether

---

[3] Plaintiffs also seek declaratory relief and an injunction on behalf of the class.  With the exception of the reasoning related to damages, the Court's reasons for denying certification of the damages claims applies equally to the non-damages claims, which are based on the same factual allegations.

compliance with Rule 23 has been demonstrated. *Comcast Corp. v. Behrend*, --U.S--, 133 S.Ct. 1426, 1432 (2013). In conducting this analysis the Court may "probe behind the pleadings," and the analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S.Ct. at 2551 (internal quotations omitted).

Before a class can be certified under Rule 23, the movant must demonstrate that the class representative is a member of the class and that:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The prerequisites in these four subsections are commonly referred to as the requirements of "numerosity, commonality, typicality, and adequate representation." *Dukes*, 131 S.Ct. at 2550. Where subclasses are necessary to maintain a class action, "[t]he requirements must be satisfied as to each subclass." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).

A class that meets these four requirements may proceed with its action if it also qualifies as one of the types of actions that may be maintained under Rule 23(b). The burden is on the party seeking certification to demonstrate with evidentiary proof that Rule 23(b) is satisfied. *Comcast Corp.*, 133 S.Ct. at 1432. Plaintiffs here seek certification under Rule 23(b)(3). An action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides a nonexclusive list of

4

matters pertinent to these findings:

> (A)    the class members' interest in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

*Id*.  Because Rule 23(b)(3) is an "adventuresome innovation," the "predominance criterion is even more demanding than Rule 23(a)" and the Court has a "duty to take a close look at whether common questions predominate over individual ones."  *Comcast Corp.*, 133 S.Ct. at 1432 (quotations omitted).

    "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member."  *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013).  To determine whether a putative class representative has established that the predominance requirement is met, the Court must examine the extent to which liability as to each putative class member may be established by common evidence.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).

> "If, to make a prima facie showing [of liability] on a given question, the members of the proposed class will need to present evidence that varies from member to member, then it is an individual question."  "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."

*Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)) (internal citations omitted).  Analyzing whether a prima facie showing of liability may be made on common rather than individual evidence requires looking to the substantive law on which the merits of the case will be decided.  State substantive law provides the rule of decision in diversity actions.  28

U.S.C. § 1652.  Therefore, liability must be determined under state law.  "District courts sitting in diversity apply the choice-of-law rules of the state where they sit."  *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014).

"The Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action."  *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005).  This involves first determining whether conflicts of law exist among the relevant states, and then which state's law to apply.  "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (brackets in original) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)).  While a forum state typically has no obligation to apply another state's laws, the forum state's laws "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them."  *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 822 (1985) (quoting *Home Ins. Co. v. Dick*, 281 U.S. 397, 410 (1930)).  In Arkansas, a conflict of laws exists if the laws of two involved states would produce different results on the same set of facts.  *Bettis v. Bettis*, 239 S.W.3d 5, 6 (Ark. Ct. App. 2006) (citing Robert Leflar's "false conflicts" principle as basis for determining that no conflict exists).

This conflicts and choice-of-law analysis is "interwoven with the certifying court's Rule 23(b)(3) predominance determination."  *Porcell v. Lincoln Wood Prods., Inc.*, 713 F. Supp. 2d 1305, 1311 (D.N.M. 2010).  It is the movant's burden on a motion for a Rule 23(b)(3) class to demonstrate the predominance of common questions, and demonstrating either the absence of conflicts or presenting an adequate subclass plan is part of that burden.  *See Gariety v. Grant*

6

*Thronton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) ("The plaintiffs have the burden of showing that common questions of law predominate, and they cannot meet this burden when the various laws have not been identified and compared."); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000) (requiring movants to demonstrate predominance by presenting sufficient choice-of-law analysis or subclass plan in case multiple state laws apply); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 208 (D. Minn. 2003) (same).

Plaintiffs acknowledge the potential for conflict among state laws, although they consider potential conflicts to be hypothetical at this point and argue that it is Bryan's burden to demonstrate conflicts. (Doc. 72, p. 18). Because Plaintiffs' proposed subclasses are aimed at allowing the Court to manage a class action in the event that conflicts of law exist, and because if subclasses are certified they must each independently meet Rule 23(a) requirements, the Court will begin with the conflicts and Rule 23(b)(3) analysis.

## III.   Conflicts of Law and Putative Subclasses

Plaintiffs, both of whom are Arkansas residents raising the protection of Arkansas law against alleged misrepresentations Bryan made in Arkansas, seek to represent putative class members who reside in Kansas, Missouri, and elsewhere[4] on the basis of similar alleged misrepresentations Bryan made in those forums. Plaintiffs raise five Arkansas causes of action on behalf of the putative class: fraud, constructive fraud, a violation of the ADTPA, breach of contract, and breach of implied warranty. Plaintiffs have not presented an adequate choice-of-

---

[4] Plaintiffs do not identify the other states in which putative class members reside and take or took their online classes, but Defendant represents that in addition to Arkansas, Kansas, and Missouri, the putative class would include students from Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Maryland, Maine, Michigan, Minnesota, Mississippi, Montana, North Carolina, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, Washington, Wisconsin, and West Virginia. (Doc. 68, p. 62).

law analysis on all of these causes of action.  Plaintiffs have, however, presented putative subclasses by which they hope to address potential conflicts.

The Court has conducted its own limited conflicts analysis, and it appears there are multiple conflicts of law on at least some causes of action.[5]  In light of the likely conflicts among relevant state laws, the Court suspects that subclassing would be an appropriate mechanism for managing a multistate class action efficiently and in a Constitutionally-permissible manner.  If it were certifying a class action, the Court's next step with respect to the claims on which a conflict of laws exists would be to determine which state's law applies, using Arkansas's choice-of-law rules informed by the Due Process and Full Faith and Credit Clauses.  *In re St. Jude Med., Inc.*, 425 F.3d at 1120.  This is unnecessary in this case because whether or not conflicts of law exist, the Court cannot certify a class action for either the putative class or the putative subclasses.

If it were to certify, the Court would likely subclass putative class members by each relevant state, and would then apply that state's law to all class claims.  This is because where conflicts of law do exist, Arkansas is unlikely to have sufficient contacts in the case of non-Arkansas students and non-Arkansas campuses for its laws to apply.  Bryan operates a campus in Arkansas, but this is not the only state where its educational services are provided, and it seems unlikely that Arkansas has sufficient contacts with this issue such that invoking Arkansas law on behalf of non-Arkansas residents for alleged wrongs that occurred outside of Arkansas would be

---

[5] As an example, there are almost certainly conflicts among the relevant consumer protection laws.  Eighth Circuit law presumes such conflicts exist because "state consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules." *In re St. Jude Medical, Inc.*, 425 F.3d at 1120 (quotation removed).  As an additional example, Kansas requires proof of common law fraud by clear and convincing evidence.  *Kelly v. VinZant*, 197 P.3d 803, 808 (Kan. 2008).  Arkansas and Missouri require only proof by a preponderance of the evidence.  *Nicholson v. Century 21, Ivy Realty, Inc.*, 818 S.W.2d 254, 257 (Ark. 1991); *Crawford v. Smith*, 470 S.W.2d 529, 531–32 (Mo. 1971) (en banc).  This difference in standard of proof of liability is one that might lead to different results, and so a conflict exists.

8

"fair."[6]   Where conflicts of law do not exist, the Court would still apply non-Arkansas law to non-Arkansas subclasses.   The Court foresees numerous manageability problems with the proposed action, including jury confusion, conflicts of law that might not become apparent until additional fact discovery has been completed, and other issues related to applying Arkansas law to some class claims but separate laws to others.   Where no conflicts of law exist, it is true that the Court could apply Arkansas law to those claims for non-Arkansas subclasses without depriving the parties of any rights.   But where no conflicts exist, it is also true that Arkansas law is no different from the other state's law, and so the law chosen would not affect the result. Thus, the Court could just as easily apply non-Arkansas law to those non-Arkansas subclasses without depriving Plaintiffs of the benefits of the Arkansas forum.   As a practical effect, this subclassing treatment might avoid the need for a more detailed contacts analysis because the state where the putative class member was allegedly misled, or where the putative class member allegedly performed his or her obligations under the contract, is almost certain to have sufficient contacts with the dispute for its own subclass that applying its law is appropriate.

The Court notes that the above analysis is largely academic in this case.   If conflicts exist and subclassing is necessary to address those conflicts and avoid Constitutional harm, then under Rule 23(a) only an Arkansas campus subclass could be certified in response to this motion.   This is because a class cannot be certified unless the Court finds that the named plaintiffs will "fairly

---

[6] Indeed, Arkansas's own choice-of-law framework recognizes this.  If it were conducting a standard choice-of-law analysis, the Court would apply the *lex loci delicti* [the law of the place where the wrong was committed] rule softened by Leflar's five factors to the tort claims. *Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 546 (Ark. 2002).  This would mean applying Kansas law to frauds alleged to have occurred in Kansas and Missouri law to constructive frauds alleged to have occurred in Missouri.  With respect to the contract claims, Arkansas would apply the law of the state with the most significant relationship to the issue. *Crisler v. Unum Ins. Co. of Am.*, 233 S.W.3d 658, 660 (Ark. 2006).  Though the parties have not briefed this conflicts issue, the Court suspects that other states would have a more significant relationship than does Arkansas to a breach of contract claim involving their own residents.

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For a class representative to be adequate, she must be a member of the class she seeks to represent. *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982) ("It is fundamental in order to meet the Rule 23(a)(4) adequate representation prerequisite that at the time the class is certified a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." (quotations omitted)). Because the Rule 23(a) requirements must be satisfied for each subclass, each subclass must have an adequate representative. Both Ramthun and Clemens were enrolled at the Rogers, Arkansas campus. (Doc. 44, ¶¶ 30, 44). Accordingly, they would be members only of any Arkansas campus subclass, and because there are no other putative class representatives joined in this lawsuit, class claims for the other putative subclasses could not be certified under Rule 23(a). With respect to the Arkansas campus putative subclass (or, if no conflicts existed at all, subclassing were unnecessary, and Arkansas law applied to the general class defined by Plaintiffs, with respect to the putative general class), Plaintiffs have failed to demonstrate that they can meet the predominance requirements of Rule 23(b), and neither an Arkansas campus subclass nor a general class applying Arkansas law to all claims will be certified.

## IV. Issue Predominance

Having found that the class claims should be analyzed on this motion under Arkansas law, the Court now turns to the predominance analysis. In determining whether common issues predominate, the Court must examine the extent to which liability as to each putative class member may be established by common evidence. *Avritt*, 615 F.3d at 1029. The Court will set out the elements of the Arkansas causes of action before analyzing whether Plaintiffs have met their burden to establish that common issues predominate in proving these claims.

10

A.      Elements of Arkansas Causes of Action

1.      Fraud and Constructive Fraud

To prevail on a cause of action for the tort of fraud (or "deceit") under Arkansas law, a plaintiff must show that: (1) the plaintiff has sustained damages; (2) a false representation of material fact was made by the defendant; (3) the defendant knew that the representation was false; (4) the defendant intended to induce the plaintiff to act in reliance upon the representation; and (5) the plaintiff justifiably relied upon the representation in acting and as a result sustained damages.  Ark. Model Jury Instr.—Civ. 402; *Knight v. Day*, 36 S.W.3d 300, 302–03 (Ark. 2001). For an omission of material fact to be equivalent to a false representation of material fact, a plaintiff must show that the defendant had a duty to disclose the material fact.  *Bridges v. United Savings Association*, 438 S.W.2d 303, 306 (Ark. 1969) (citing C.J.S. Fraud §§ 15, 16).

Liability for constructive fraud requires a plaintiff to show by a preponderance of the evidence that: (1) a legal or equitable duty existed between the plaintiff and the defendant; (2) the defendant made a material misrepresentation of fact; (3) the misrepresentation was a breach of the duty owed to the plaintiff; (4) the misrepresentation was of a type considered fraudulent because of its tendency to deceive others; (5) the plaintiff justifiably relied on the misrepresentation;[7] and (6) the plaintiff was harmed as a result of the reliance.  *Knight*, 36 S.W.3d at 303; *Roach v. Concord Boat Corp.*, 880 S.W.2d 305, 307 (Ark. 1994) ("The year model of the boat was misrepresented to appellant which amounts to a material misrepresentation upon which appellant justifiably relied to his detriment.  In the absence of intentional wrongdoing, this amounts to constructive fraud, which was proved by a

---

[7] Plaintiffs' claim that "[a]ssessing this common law action requires no discussion concerning reliance by the proposed Class" does not appear to be a correct statement of the law. (Doc. 58, p.31).

preponderance of the evidence." (internal citation omitted)).   Regarding the "type" of misrepresentation, the plaintiff need not show "moral guilt, purpose or intent of the [defendant]" but must show that the defendant "knows [the misrepresentations] to be false, or, not knowing, asserts them to be true." *Miskimins v. City Nat'l Bank of Fort Smith*, 456 S.W.2d 673, 679 (Ark. 1970).   The legal or equitable duty that must have existed need not necessarily be a fiduciary one. *S. Cnty., Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 327 (Ark. 1994).

### 2.  Breach of Contract

To prevail on a breach of contract claim in Arkansas, the plaintiff must show that: (1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the contract required; and (5) the plaintiff was damaged by the breach. *Foreman Sch. Dist. No. 25 v. Steele*, 61 S.W.3d 801, 807 (Ark. 2001) ("A person may be liable for breach of contract if the complaining party can prove the existence of an agreement, breach of the agreement, and resulting damages."); Ark. Model Jury Instr.—Civ. 2401.

### 3.  Breach of Implied Warranty

Plaintiffs' submissions on the instant motion clarify that their breach of implied warranty claims are based on state legislation enacting Article 2 of the Uniform Commercial Code ("UCC").   (Doc. 57-4, p. 2 (citing Ark. Code Ann. § 4-2-315, V.A.M.S. 400.2-315, and Kan. Stat. Ann. 84-2-315 as the basis for the implied breach of warranty claims)).   This statute governs implied warranties of fitness for a particular purpose.

> To recover for a breach of an implied warranty of fitness for a particular purpose, the plaintiff must prove that (1) he has sustained damages; (2) at the time of contracting, the defendant had reason to know the particular purpose for which the product was required; (3) the defendant knew the buyer was relying on defendant's skill or judgment to select or furnish the product; (4)

> the product was not fit for the purpose for which it was required;
> (5) this unfitness was a proximate cause of plaintiff's damages; and
> (6) plaintiff was a person whom defendant would reasonably have
> expected to use the product.

*Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 785 S.W.2d 13, 17 (Ark. 1990).

### 4.      ADTPA Private Action

To prevail on a private action under the ADTPA based on an affirmative misrepresentation, a plaintiff must show that: (1) the plaintiff has sustained damages; (2) the defendant used a deception, fraud, or false pretense in connection with the sale or advertisement of services; and (3) the defendant's conduct was a proximate cause of the plaintiff's damages. Ark. Code Ann. § 4-88-108; Ark. Model Jury Instr.—Civ. 2902; *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 666 (8th Cir. 2009).  To prevail on a private action under the ADTPA based on omission, a plaintiff must show that: (1) the plaintiff has sustained damages; (2) the defendant concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of services; (3) the defendant intended that others rely upon the concealment, suppression, or omission; and (4) the defendant's conduct was a proximate cause of the plaintiff's damages.  *Id.* In either case, with respect to the issue of damages, a plaintiff must show that she has sustained "actual damage or injury."  Ark. Code Ann. § 4-88-113(f); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005).

### B.      Predominance Analysis

The Court must determine the extent to which a prima facie showing of liability on the above causes of action can be made with common evidence, or instead can only be shown by individual evidence.  Individual issues must then be weighed against common issues.  If common issues predominate, movants must also establish that class action is a superior method of adjudication.

### 1.      Fraud and Constructive Fraud

Regarding the Arkansas cause of action for fraud based on any alleged affirmative representation that Bryan credits would transfer to other institutions, Plaintiffs have demonstrated that common evidence will likely resolve whether Bryan knew that affirmative representation was false or made that representation without knowledge of its truth or falsity and whether Bryan intended to induce putative class members to act in reliance upon the representation.   However, Plaintiffs have failed to demonstrate that common evidence will resolve whether an affirmative misrepresentation of fact was made to each putative class member in the first place.   Instead, Plaintiffs' motion demonstrates that this is an individual issue. Assuming Plaintiffs' factual allegations in support of this motion are true, affirmative misrepresentations that credits would transfer were only made to students who "intently inquired" about the issue, rather than to the entire putative class.  (Doc. 58, p. 6).  "Plaintiffs do not contend that such was the case for every student."   (Doc. 72, p. 3).   In essence, Plaintiffs have conceded that whether an affirmative misrepresentation was made to each putative class member must be established by individual evidence.[8]

If Plaintiffs' fraud claim is based instead on Bryan's omission of information that credits

---

[8] Plaintiffs also allege that Bryan uniformly told putative class members that it was "nationally" or "fully" accredited, but the Court does not read Plaintiffs' filings as arguing that this statement is itself false.  Plaintiffs' complaint can only reasonably be read as acknowledging that Bryan is nationally accredited, and Plaintiffs do not allege that only some, but not all, of Bryan's programs are accredited.  (Doc. 44, ¶¶ 12–22).  Rather, Plaintiffs' argument is that Bryan's common misleading statement was that in stating that it was "fully" or "nationally" accredited, it did not disclose the fact that credits from a nationally-accredited institution were unlikely to transfer to regionally-accredited institutions, and most other schools in Arkansas were regionally-accredited.  (Doc. 72, p. 7 ("[T]his evidence shows that Bryan College would avoid disclosing that their credits would not transfer to the vast majority of colleges and universities at any cost."); *Id.*, p. 10 (citing deposition testimony of Morelan and Roarke to support proposition that Bryan's ACICS national accreditation was different from regional accreditation, and that regionally-accredited institutions would not generally accept credits from nationally-accredited institutions); *see also* Doc. 44, ¶¶ 12–22).

would not transfer to other institutions, common evidence could likely resolve whether Bryan knew its credits would not automatically transfer to other institutions, whether Bryan omitted that information from its standard representations to each student, and whether Bryan intended students to rely on its representations in making their enrollment decisions.  However, Plaintiffs have provided no basis for the Court to find the existence as a matter of law of a duty to disclose information about the nontransferability of credits, and they have not otherwise shown that the existence of a duty to disclose can be established by common evidence.

Regarding Plaintiffs' constructive fraud claim, common evidence could likely resolve whether Bryan made a material misrepresentation of fact and whether that misrepresentation was of the type appropriately considered fraudulent.  As with the "duty to disclose" element of fraud by omission, however, Plaintiffs have not demonstrated that a legal or equitable duty exists between Bryan and its students such that the alleged misrepresentation would be a breach of that duty.  Plaintiffs also have not demonstrated that the existence of a duty could be established by common evidence, nor have they demonstrated that the scope of that duty (and thus, whether the alleged misrepresentation was a breach of that duty) can be resolved by common evidence.

Whether or not the alleged misrepresentation was an affirmative misstatement or omission where there was a duty to disclose, for both the fraud and constructive fraud claims the issue of justifiable reliance is an individual issue that cannot be resolved by looking to common evidence, and that determination alone would overwhelm adjudication of the common issues. Furthermore, the damages model proposed in Plaintiffs' complaint is insupportable under their theory of liability for fraud or constructive fraud.[9]  Plaintiffs have not met their burden to show that damages would be capable of determination based on common evidence.

---

[9] Plaintiffs' claim for damages essentially alleges that Bryan degrees have no value. (Doc. 44, ¶¶ 122–24).

Turning first to reliance, Plaintiffs have provided a number of cases in support of their argument that the Court can presume reliance across the class, or that individual issues of reliance will not predominate.  (Doc. 58, pp. 28–31).  These cases can be distinguished.  In *Birts v. The Estate Plan, Inc.*, 4:08-CV-04047, 2009 WL 692207 (W.D. Ark. Mar. 13, 2009), the court certified a class action against a defendant who defaulted by not answering, and thus admitted the fraud allegations, including the allegation that "Plaintiffs and the Class reasonably relied upon the representations and omissions by The Estate Plan and suffered damages as a result." Class Action Complaint, *Birts v. The Estate Plan, Inc.*, 4:08-CV-04047, Doc. 2, ¶ 112 (W.D. Ark. Feb. 5, 2008).  That is, there was no presumption of reliance in *Birts*.  The issue of reliance was admitted, rather than disputed.  Here Bryan contests the allegation that every putative class member relied on statements about transferability of credits, arguing that many wanted only a terminal degree from Bryan.

In *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 515 (N.D. Ohio 2008), the court addressed an alleged misrepresentation based on form documents that omitted information about lower-priced insurance policies offered by the defendant where the defendant had a duty to disclose the facts omitted under Ohio law.  In *Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001, 1006 (Ohio 1998), the court allowed a common inference of reliance where the alleged fraud involved intentional omission of "state-mandated written disclosure warnings."  In both cases, the defendant had a duty to disclose the omitted fact, so the Court allowed an inference of common reliance.  Plaintiffs have not demonstrated the existence of any duty to disclose omitted information about the nontransferability of credits, or identified any legal basis for finding the existence of a duty was common to putative class members.

In *Murray v. Sevier*, 156 F.R.D. 235 (D. Kan. 1994)—an order in which the court's

actions were limited to allowing an amended complaint and directing the case to be transferred to a different district—the court's analysis of whether reliance could be commonly inferred from omissions was limited to speculating that, depending on the relevant state law, such an inference might be allowed. *Murray*, 156 F.R.D. at 248–49, n.11. *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245 (S.D. Ga. 2005) is a decision from a Rule 10b-5 securities fraud class action, where courts often allow a rebuttable presumption of reliance under a "fraud on the marketplace" theory.

In *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), the 11th Circuit held that individual reliance issues did not prevent certification of RICO[10] claims predicated on mail and wire fraud. This decision partly appears to be a result of the court being confronted with precedent requiring plaintiffs to prove reliance in a RICO case predicated upon mail fraud and wire fraud violations. *Id.* at 1257. Legal developments since indicate that reliance is not an element of a civil RICO claim based on this type of statutory fraud (as opposed to common law fraud). *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 655 (2008). Furthermore, because of the nature of the misrepresentations, the individual reliance in *Klay* was susceptible to proof by common evidence.

> The alleged misrepresentations in the instant case are simply that the defendants repeatedly claimed they would reimburse the plaintiffs for medically necessary services they provide to the defendants' insureds, and sent the plaintiffs various EOB forms claiming that they had actually paid the plaintiffs the proper amounts. While the EOB forms may raise substantial individualized issues of reliance, the antecedent representations about the defendants' reimbursement practices do not. It does not strain credulity to conclude that each plaintiff, in entering into contracts with the defendants, relied upon the defendants' representations and assumed they would be paid the amounts they were due. A jury could quite reasonably infer that guarantees

---

[10] Racketeer Influenced and Corrupt Organizations Act.

> concerning physician pay—the very consideration upon which those agreements are based—go to the heart of these agreements, and that doctors based their assent upon them. This is a far cry from the type of 'presumed' reliance we invalidated in *Sikes*. Consequently, while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue). For this reason, this is not a case in which individualized issues of reliance predominate over common questions.

*Klay*, 382 F.3d at 1259. In the instant case, in contrast to *Klay*, the misrepresentation/reliance issue is in part whether the alleged misrepresentations go to the heart of the agreement between putative class members and Bryan. This is likely to be an individual issue. Plaintiffs' case might be more similar to *Klay* if they alleged that Bryan agreed to give them three credit hours per course but was in reality giving them only one credit hour per course.

The Court finds Plaintiffs' cited cases inapposite. Because of the various subjective reasons for which putative class members might seek an education from Bryan, and because Plaintiffs have provided the Court with no basis to infer that Bryan had a duty to disclose information to putative class members about transferability of credits, and because this is not a securities fraud class action, the Court finds no basis to presume reliance. Plaintiffs have not established that there is no material variation in the kinds or degrees of alleged reliance by putative class members. As Bryan points out, some putative class members may have viewed their degrees as terminal and not relied at all on alleged omissions about transferability of credits. (Doc. 68-14, p. 65:12-25). This does not appear to be the sort of "presumed reliance" case contemplated by the Advisory Committee in drafting Rule 23.[11] Commentators recognize that presuming reliance is far from the norm, and typically limited to securities cases absent a firm

---

[11] "On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23, Advisory Committee Notes, (1966 Amendments).

public policy reason.  *See* Newberg on Class Actions (5th ed.) §4:60.  Accordingly, it appears that this element will require individual, rather than common, evidence, and is best classified as an individual issue.  Plaintiffs have not demonstrated that resolving the common issues in this case will predominate over resolving even this individual issue for each putative class member.

Turning to the issue of damages, Plaintiffs have not established that damages may be determined by common evidence.  Arkansas allows two measures of damages for fraud: "(1) the benefit-of-the-bargain measure (the difference in value of the property as represented and the property's actual value at the time of the purchase) and (2) the out-of-pocket measure (the difference between the price paid for the property and the property's actual value when received)." *Wallis*, 208 S.W.3d at 155.[12]  When determining whether common damages issues predominate over individual ones, the damages model should "establish that damages are susceptible of measurement across the entire class . . . . Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . . ." *Comcast Corp.*, 133 S.Ct. at 1433 (quotation and internal citation omitted).

Plaintiffs argue that "[c]redits and degrees capable of transferring to most post-secondary institutions have an inherent value . . . regardless of whether the student intended to transfer to another school at the time of enrollment."  (Doc. 72, p. 16).  They argue that because the transferability of credits and degrees has some value, damages are capable of measurement on a class-wide basis.  Whether or not this is correct, the evidence on this motion demonstrates that,

---

[12]  Although  the  Arkansas  Supreme  Court  in  *Wallis*  denied  benefit-of-the-bargain damages for the products-liability-related fraud before it, it distinguished cases where the fraud claims were rooted in basic contract law.  *Wallis*, 208 S.W.3d at 158–59.  Accordingly, unlike the ADTPA damages issue raised below, *Wallis* does not appear to require summary judgment for Bryan on the common law fraud claims.

contrary to the allegations made in the complaint, the education provided by Bryan has some value even in the absence of transferable credits. (Docs. 68-7, pp. 177:3–178:25 (deposition of Clemens describing other values of education than transferability of credits); 68-9, pp. 44:6–45:8, 48:22–50:5 (deposition of Ramthun describing same)). Assuming liability for fraud and constructive fraud were established, it appears that the appropriate measure of damages would be diminution in value, and would require determining the difference in the value of an education with transferrable credits and an education without them, or in the amount paid for that education and its actual value. Plaintiffs have provided no model (other than the 100% damages, plus some, sought in their complaint) to demonstrate that determining damages can be done on a common basis, and have not otherwise demonstrated that damages will be supportable by common evidence.

When coupled with the reliance issue, the Court finds that Plaintiffs have not established that common issues will predominate over individual issues with respect to the fraud and constructive fraud claims. Accordingly, those causes of action will not be certified for class action.

### 2.      Breach of Contract

Regarding the cause of action for breach of contract, common evidence might resolve whether a contract existed and whether putative class members performed or stood ready to perform. As with fraud, however, Plaintiffs have not demonstrated how damages for the alleged breach can be determined on a common basis. This is not necessarily fatal, as Arkansas allows nominal damages for breach of contract. *Dawson v. Temps Plus, Inc.*, 987 S.W.2d 728–29 (Ark. 1999). More importantly, there appears to be some dispute over the terms of the contract, and Plaintiffs have not demonstrated that this issue can be resolved primarily on the basis of common

20

evidence.  Plaintiffs identify the contract that allegedly has been breached as the Bryan College

Enrollment Agreement, which is filed at Doc. 57-25.  (Doc. 58, pp. 10–11 ("The next, and

perhaps most critical, step in the enrollment process involved the students signing enrollment

agreements with Bryan College. . . . This is a critical step because, by signing the enrollment

agreement, prospective students enter into a contract with Bryan College in which they agreed to

pay tens of thousands of dollars in tuition in exchange for the value of Bryan College's education

services."); Doc. 72, p.3 ("Clearly, the Enrollment Agreement speaks for itself and is indeed a

contract to pay tens of thousands of dollars in tuition for educational services.").   Bryan

disagrees.  (Doc. 68, p. 18 ("Plaintiffs cite nothing to support this alleged 'fact.'  It is not true.")).

The Court will not resolve this dispute on the instant motion, in no small part because some fact

discovery likely remains to be conducted in this case.[13]

   The Court *will* address this dispute insofar as it relates to predominance, however.

Plaintiffs argue that the predominant common questions regarding the breach of contract claims

are "whether Bryan College 1) promised the proposed class that the institution would provide

certain educational services and valued degrees, and 2), whether Bryan College failed to deliver

upon that promise."  (Doc. 58, p. 32).  These do not even appear to be common questions in this

lawsuit, let alone predominant ones.  As the Court's order granting dismissal in part should have

made clear, because there is no Arkansas cause of action for educational malpractice, Plaintiffs'

complaint states a breach of contract claim only to the extent that they have alleged Bryan made

---

[13] The Court notes, however, that if the contract allegedly breached is limited to the
enrollment agreement, then while Plaintiffs might be able to establish predominance, the Court is
hard-pressed to see how Bryan would not then be entitled to partial summary judgment on this
cause of action.  Plaintiffs have identified no law creating a fiduciary obligation or other duty to
disclose information about the nontransferability of Bryan University credits, and on its face the
enrollment agreement makes no affirmative representations regarding credit transfer.  (Doc. 57-
25).

some promise to deliver transferrable credits.  (Doc. 18, pp. 5, 6 ("A careful examination of these sections of the Complaint indicates that . . . [Plaintiffs] do not attack the general quality of the education provided by Bryan. . . . [The breach of contract claim] claims that those [alleged statements regarding accreditation and transferability of credits] created a contractual relationship which Bryan breached when it failed 'to deliver upon the education and other services promised.'")).

At this point it should be clear that there is no dispute between the parties that Bryan delivered educational services and degrees with some value.  Plaintiffs' Rule 23(b)(3) burden is to provide evidence to establish that the common issues surrounding the alleged breach of contract to provide transferrable credits outweigh the individual issues.  They have not done so. Indeed, at this point they have barely raised a common issue as required by Rule 23(a)—whether putative class members entered into a contract with Bryan.  Because Plaintiffs have not provided argument, analysis, or evidence demonstrating the predominance of supposedly-common breach of contract issues, the Court cannot find that they have met their burden to demonstrate that common issues predominate.  Accordingly, no class action will be certified on the breach of contract claims.

### 3.    Breach of Implied Warranty

Regarding the Arkansas cause of action for breach of implied warranty, Plaintiffs have not offered any argument that common issues predominate over individual issues.  Plaintiffs have not even made an argument that any "breach of implied warranty" issues can be resolved by common evidence.  Instead, they argue that because each state (Arkansas, Missouri, and Kansas) has an essentially identical UCC provision on breach of implied warranty, "there is manageable uniformity with respect to this cause of action . . . [and it] is appropriate for class-wide

treatment."  (Doc. 58, p. 33).  Accordingly, Plaintiffs have not demonstrated that any part of this claim can be resolved by common evidence.

When the Court considers the elements of this cause of action, two conclusions are inevitable.  First, as set out below, this does not appear to be a cognizable claim, and certification would be improper on that basis.  *See Halvorson*, 718 F.3d at 778–79 (addressing the issue of standing for putative class members and citing to a Third Circuit case which rejected class certification where class claims were "non-cognizable").   Second, even if this claim is cognizable, and had Plaintiffs at least attempted to demonstrate predominance of common issues on this claim, they likely still would not have met their burden.  Whether Bryan had reason to know at the time of contracting with each putative class member that the particular purpose for which that putative class member wanted a Bryan education was to transfer credits to another school would likely depend on individual evidence.  The same is true for determining whether Bryan knew that each student was relying on Bryan's skill or judgment to select or furnish the appropriate education for that student.  Finally, the same is true with respect to the question of whether the alleged unfitness was a proximate cause of putative class members' damages.  For all these reasons, Plaintiffs have not met their burden to demonstrate that common issues predominate over individual issues on this class action.

### 4.    ADTPA Private Action

Regarding the ADTPA claim, as with the breach of implied warranty claim Plaintiffs have not offered any argument that common issues predominate over individual issues, nor demonstrated that the ADTPA issues can be resolved by common evidence.  Instead, they argue that because Arkansas, Missouri, and Kansas have enacted similar consumer protection statutes, there is no conflict of laws, and that because the Court has several available tools at its disposal

for managing a consumer protection class action, certification is proper.   (Doc. 58, p. 27). Accordingly, Plaintiffs have not demonstrated that any part of this claim can be resolved by common evidence.

As with the breach of implied warranty claim, when the Court examines the ADTPA claim serious questions arise about whether the claim is cognizable, preventing certification. The issue of whether the claim is cognizable is addressed below.  Furthermore, even if this is a cognizable claim, although many elements of prima facie liability might be established by common evidence, the requirement that putative class members show that Bryan's misrepresentation or omission was a proximate cause of their damages appears to be an individual issue of reliance which would predominate over common issues, and Plaintiffs have not demonstrated otherwise.

Under Arkansas law, "[p]roximate cause encompasses two distinct aspects: cause in fact and legal cause." *Ashley Cnty., Ark.*, 552 F.3d at 667.  It appears to the Court that the proximate cause element is coextensive with reliance in this case.  Plaintiffs argue that no reliance is necessary in an ADTPA claim.  (Doc. 72, p. 12).  Whether or not Plaintiffs are correct with respect to some ADTPA claims (for example, those brought by the state Attorney General), in this case Plaintiffs claim that Bryan's misrepresentation about transferability of credits caused them harm, and they must prove that the misrepresentation was the proximate cause of that harm. It is true that proximate cause is not always coextensive with reliance in cases premised on fraudulent misrepresentations. *See*, *e.g.*, *Bridge*, 553 U.S. at 656–58 (2008) (discussing instances of fraudulent misrepresentation where proximate cause may be shown without showing reliance). Plaintiffs offer no theory of causation, and the Court cannot imagine one, whereby a misrepresentation like the one alleged here can cause harm absent reliance on that

misrepresentation.  It appears to the Court that the issue of proximate cause in this case will therefore be an issue of reliance.  As set forth above, the Court views reliance as an individual issue that will predominate over common issues in this lawsuit.  A proximate cause determination is also likely to involve issues of intervening cause that will depend on individual evidence.  Plaintiffs have not met their burden to demonstrate that common issues predominate in their ADTPA claim, and the Court cannot certify a class action on that ground.

## V.      Non-Cognizable Claims

Even if the Court could find the predominance requirement was met for the breach of implied warranty and ADTPA claims, it would not certify those claims because it appears that they are non-cognizable.  Plaintiffs' complaint initially survived a motion for dismissal.  In the order denying the motion to dismiss, the Court found that Plaintiffs' breach of implied warranty claim might be a legally cognizable claim to the extent that it was based on nontransferability of course credits.[14]  (Doc. 18, pp. 6–7).  As the Court noted above when setting out the elements of Plaintiffs' causes of action, Plaintiffs have made it clear that their breach of implied warranty claims are UCC Article 2 claims.  UCC Article 2 applies to the sale of goods.  Ark. Code § 4-2-102.  Education does not appear to qualify as a "good" as that term is defined in UCC Article 2.  Ark. Code § 4-2-105.  Plaintiffs have not provided the Court with any authority—and the Court has not found any while conducting its own rigorous analysis—for classifying higher education as a "good."  The statutes Plaintiffs cite on implied warranty do not appear to provide a basis on which relief can be granted, and it appears to the Court that this claim is not cognizable.

Regarding the ADTPA claim, with respect to the issue of damages, to maintain a private action Plaintiffs must show that they have sustained "actual damage or injury."  Ark. Code Ann.

---

[14] Or, at least, the Court found that Bryan had not carried its burden to show otherwise.

§ 4-88-113(f).  This requirement apparently means that private plaintiffs cannot recover under the ADTPA for diminution in value. *See Yazdianpour v. Safeblood Techs., Inc.*, --F.3d--, *4 (8th Cir. Feb. 27, 2015) (citing *Wallis*, 208 S.W.3d at 161–62).  As noted above, Plaintiffs have submitted evidence that the education provided by Bryan has some value even in the absence of transferable credits.  This does not seem to qualify as the actual damage or injury required by the *Wallis* court. *Cf. M.S. Wholesale Plumbing, Inc. v. Univ. Sports Publ'ns Co., Inc.*, No. 4:07CV00730, 2008 WL 90022, *4 (E.D. Ark. Jan. 7, 2008) ("Unlike the plaintiff in *Wallis*, who suffered a purely pecuniary loss, M.S. is not alleging that it purchased a product with less economic value than represented by the seller.  Instead, M.S. claims that it paid for a product that was not at all what USP represented-that is, an advertisement sold on behalf of ATU.").  Plaintiffs purchased education services from Bryan.  Plaintiffs have presented evidence that an education that has transferrable credits is more valuable than one that does not, but they have not presented evidence that they received no education services.  On its face, the loss alleged appears to be purely pecuniary, analogous to purchasing a product with less value than represented.  Accordingly, Plaintiffs do not appear to have a cognizable ADTPA claim.

The Court may grant summary judgment sua sponte when "the party against whom judgment will be entered [is] given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Interco Inc. v. Nat'l Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990); Fed. R. Civ. P. 56(f)(3).  It appears that the breach of implied warranty and ADTPA claims are not cognizable because, for the reasons set forth above, the Court is without authority to grant relief on those claims.  Accordingly, Plaintiffs will be ordered to show cause why Bryan should not have partial judgment as a matter of law.

## VI.    Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' motion for leave to supplement (Doc. 74) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' motion for class certification (Doc. 57) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs SHOW CAUSE by April 8, 2015 why Bryan should not have partial judgment as a matter of law with respect to the breach of implied warranty and ADTPA claims.  Any response by Bryan to Plaintiffs' filing will be due within 14 days of the filing.

IT IS SO ORDERED this 18th day of March, 2015.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE